# Gibson *against* The Union Rolling Mill Company.

A misconception which will avoid a contract must be a mutual one, and of a fact which entered into the contemplation of both parties as a condition of their assent.

WRIT of error to the court of common pleas of *Alleghany* county.

This was an action of *assumpsit*, instituted against James Gibson, and founded on what are popularly called promissory notes for the delivery of pig metal, given by Gibson, jointly and severally with Thompson M'Kean, to the plaintiffs below. The notes were four in number, and dated the 10th of April 1825, and were respectively of the following amount, viz.

1st. Note at 9 months for 20 tons, with a credit on the 19th of May 1827, of 13 tons 18 cwt; 2d. Note at 12 months for 20 tons; 3d. Note at 15 months for 19 tons; 4th. Note at 18 months for 19 tons.

The defendant below pleaded payment, with leave to give fraud, want of consideration, and other special matters in evidence.

[Gibson v. The Union Rolling Mill Company.]

On the trial of the cause, the plaintiffs below gave the notes in evidence, and gave evidence showing the value of pig metal at the several times at which the same became deliverable according to the terms of the contract.

The defendant below then offered to prove, that the judgments held by the plaintiffs below against S. K. Page, which formed the consideration of the notes, were actually of no value; that at the time of giving these notes, and for a considerable time before, S. K. Page, James Gibson, Thompson M'Kean and M. B. Lowrie, were partners, carrying on the Cool Spring Furnace in Fayette county; that Page, one of the partners, had become very much embarrassed; that shortly previous to the date of these notes, Page gave judgments to the plaintiffs below, and to Henry Baldwin, one of the said plaintiffs; that executions were issued on said judgments; that Lowrie and Page lived in Pittsburgh, and M'Kean and Gibson in Uniontown, Fayette county; that M'Kean and Gibson left Uniontown for Pittsburgh on the 3d of April 1826, and did not return until after the 10th of April; that on the 4th of April, the store of M'Kean, Gibson and Company was shut up by the sheriff under the executions of the plaintiffs below, and all the personal property of the firm levied on; that under these circumstances the plaintiffs below, and M'Kean, Gibson, Lowrie and Page, met for the purpose of making an arrangement of the matters; that Page was a party to the arrangements entered into at the meeting, and was consulted by both parties as to the extent of his interest in the real estate belonging to the Cool Spring Furnace, and represented to both parties that there was nothing due from him upon his articles of agreement with Fitzsimmons, but that he had a clear title to one-third of the Furnace lands; and, in consideration that these notes should be given to satisfy the judgments of Baldwin and the Union Rolling Mill Company, that he would convey or procure from Fitzsimmons a conveyance of one-third of the Furnace and lands attached thereto; that nothing was said at the time of the arrangement about the mortgage he had given to Fitzsimmons, and none of the parties, except Page, knew, or could know, of the recording of the same; that in consideration of the foregoing arrangement, the notes were given, together with two other notes of the same date (one payable in ninety days for 510 dollars, the other for twenty tons of pig metal), which were paid; and, that at the same time Baldwin and the Union Rolling Mill Company assigned their judgments against Page to M. B. Lowrie, " under and subject to the following conditions:"

" That it shall be and remain a lien on both the real and personal property now bound by it, and the execution issued in consequence of it, and subject to my control and directions; but no property to be removed or sold, or any interference with the sale or disposition or management of the personal property until a failure on the part of Thompson M'Kean, James Gibson or Matthew B. Lowrie to comply with the engagements this day entered into by them with the Union

· III.—E

Rolling Mill Company. On compliance with these engagements, this judgment to be for such use and purposes as the said Matthew B. Lowrie shall direct and authorize, otherwise to be and remain for my use as if this agreement had not been made.

"HENRY BALDWIN."

The judgment held by the Union Rolling Mill Company against Page was assigned on the same conditions.

The defendant below further offered to show, by the records of Fayette county, that there were other judgments against the said Page, of the same date with those of the plaintiffs below, and that in fact Page had no interest whatever in the real property of the Furnace, having by sundry deeds of conveyance, before that time, conveyed away to W. Fitzsimmons, Thomas and James Taylor, and others, all the interest which he ever had, and a good deal more, and having, on the 31st of March preceding, given a mortgage to Fitzsimmons on one half of said property (which was more than he owned), which was recorded on the 5th of April 1826, and which mortgage remained unsatisfied.

The defendant below also offered to prove by the deposition of the recorder of Fayette county, that the copies of the records offered in evidence were all the papers relative to the Cool Spring Furnace lands to which Page was a party; and that the money already paid by the defendants below exceeded any interest which Page had in the personal property of the firm; and that shortly after this arrangement Page became insolvent.

The whole of this testimony was objected to by the plaintiffs below. The objection was sustained, and the testimony rejected by the court, on the following grounds: "the standing of Page ought to have been known by his co-partners. If they were deceived in this particular it was their own fault, not that of the plaintiffs. They voluntarily agreed on their part to pay Page's debt, provided the plaintiffs would suspend their executions. It is a valid agreement to pay the debt of another, and they took the risk on themselves. They entered into the arrangement without being deceived by the plaintiffs. That their store was shut up by executive process is immaterial, since they had their remedy by action of trespass. They chose to abandon their legal rights, and to enter into a contract to pay Page's debt. Shall they now set up as a defence, that they were mistaken as to the value of Page's property, where there is not the slightest imputation of fraud, or where there is no mistake arising from imposition on the part of the plaintiffs?"

To the rejection of the testimony the defendant below excepted.

Verdict and judgment for plaintiffs below, for the full amount of their claim.

The error assigned was, that the court erred in rejecting the evidence offered by the defendant below, as contained in the bill of exceptions.

*W. H. Lowrie* and *Forward*, for the plaintiff in error.

In Pennsylvania a man will not be compelled to pay for land, for which he cannot obtain a good title. *5 Binn.* 365 ; 1 *S. & R.* 445 ; 7 *S. & R.* 43 ; 2 *P. Wms* 219. It is no answer to say, that this is but a partial failure of consideration. In Pennsylvania, we are entitled to relief *pro tanto*, as in cases of dower, and other incumbrances on real estate, and eviction of part of the land sold, and in cases of warranty of chattels which prove bad. *5 S. & R.* 201 ; 7 *S. & R.* 43; 16 *S. & R.* 258—261. In some cases the law is the same in New York. *8 Cowen's Rep.* 31 ; 2 *Wendell's Rep.* 431. Here the partial failure of consideration is evident. The consideration to be given was Page's interest in the personal property of the Cool Spring Furnace, and in the store belonging to it, and also one-third of the furnace lands, which he represented as still belonging to him. It was this interest in the land that gave value to the judgments against Page. It turns out that Page had no title. He had sold all he ever had. There was nothing upon which the lien of the judgments could attach. Page was a party to the negotiation which closed in the giving of the notes. The case stands therefore as if Page had conveyed the land in consideration of the notes, and were now seeking to enforce their payment. The notes were obtained by a suppression of the truth, and a suggestion of what was false. He suppressed the fact of having given a mortgage to Fitzsimmons two or three days before this arrangement, and which was recorded while the parties were at Pittsburgh making the arrangement, and of the recording of which they could not know ; and he represented himself as owning one-third of the lands, when he owned none. The principle of *caveat emptor* does not apply against a positive representation. *2 Cox's Rep.* 364. Even in case of mere mistake on the part of the defendant in relation to such a consideration, without any evidence of fraud, the court would relieve. *2 Powell on Con.* 122, 123 ; 3 *Serg. & Rawle* 331 ; 9 *Serg. & Rawle* 80 ; 3 *Peters's Cond. Rep.* 616 ; 1 *Fonb. Equity* 116 ; 9 *Mass. Rep.* 408 ; 2 *Hall's Rep.* 264 ; 1 *Wendell's Rep.* 362 ; 1 *Brod. & Bing.* 289. But the fraudulent concealment and misrepresentation are a good bar to the action in this state. Some of the authorities before cited are directly in point here. 1 *Fonb. Equity* 122 ; 1 *Peters's C. C. Rep.* 385 ; 6 *Munf. Rep.* 210. The defendant below is not to be presumed to know the standing of his partner Page relative to his real estate, any more than a stranger. If such presumption should arise, we had a right to prove the contrary, and offered to do it. His representations to the contrary clear us from the operation of the *caveat emptor*. *2 Cox's Rep.* 364. The plaintiffs below must be affected by the fraud of Page, and by the failure of consideration, because Page was a party to the negotiation, and the consideration was to proceed from him, and because they shall not be permitted to avail themselves of the fraud of another, even though they were not privy to it. *Doug.*

[Gibson v.·The Union Rolling Mill Company.]

*Rep.* 229. And herein the present case exactly agrees with the case of M'Carty *v.* Springer, 3 *Penns. Rep.* 157, in every particular. Suppose this were a covenant, or a bond, or a note under seal to Page, to be assigned to the use of plaintiffs below, we would be entitled to our defence. 16 *Serg. & Rawle* 237. This is a promise to pay the debt of another, and must have a consideration ; and failure of consideration must affect the plaintiffs below as in other cases. If there was any here it was one that was ineffectual, and a claim that could not be enforced. 3 *Pick. Rep.* 94 ; 4 *East's Rep.* 463. But the plaintiffs below are not without blame. They took advantage of Gibson's ignorance of his rights, and levied upon his interest in the store under an execution against Page. 2 *Powell on Con.* 118; 3 *Pick. Rep.* 92. Give the transaction the most favourable light for the plaintiffs below, and it will appear in the light of a bill of exchange, drawn by Page in their favour, and accepted by Gibson ; or a promissory note given by Gibson to Page, and by him indorsed to the plaintiffs below as security for the debt due them, or in payment of it, the plaintiffs being fully acquainted with all the circumstances under which the bill or note was given. In such case we are clearly entitled to our defence. *Chitty on Bills* 70, *note* ; 7 *Johns. Rep.* 362 ; 20 *Johns. Rep.* 645 ; 10 *Wendell's Rep.* 83. What injury will the plaintiffs below sustain by being remitted to their original claim ? That they have never abandoned. The notes were only given as collateral security, and the judgments were conditionally assigned. Gibson should not pay for what he never got, and never can get. The plaintiffs below still hold their judgment against Page. Let them resort to that.

*Fetterman*, for the defendants in error, the court declined to hear.

The opinion of the Court was delivered by

GIBSON, C. J.—Parties who have treated on the basis of a fact falsified by the event, are not bound, because they acceded to the contract on a condition not performed. But did the plaintiffs treat on the basis that Page had a title to one-third of the Cool Spring Iron-works ? That fact was exclusively for the consideration of the defendant, being a matter in which, so far as regarded his inducement to execute the notes, the plaintiffs were not concerned. They had recovered judgments against the partners carrying on the business of those works, under which the store of two of them was seized in execution and shut up ; and the defendant gave the notes in question to release it from the levy, taking an assignment, in the name of Lowry, of the judgments as a security for Page's eventual responsibility. The fact misrepresented by Page, that he had title to a third of the estate, and that the judgments bound it, constituted an inducement for the defendant to pledge his own responsibility; but it was no condition of the contract. The consideration of the

[Gibson v. The Union Rolling Mill Company.]

notes was forbearance of the debt, with an assignment of the original security; and there is no pretence that there has been a failure of it. It was no part of the agreement, express or implied, that Page had an estate bound by the judgments. Of that matter the defendant and those concerned with him were to judge for themselves; and if their confidence in it has been abused by Page, they who confided in its representation, instead of the plaintiffs who did not, are to take the consequences. The plaintiffs did not seek the contract, and consequently had nothing to do with these representations, which were not made by them or to them, but by Page to the defendant. The defence is an attempt by a surety to extricate himself from his engagement on the ground that he was inveigled into it by the artifice of the principal. It is worse; for the property of the defendant and his partners as principals, was in the gripe of the sheriff, and he now refuses to pay the stipulated price of the rescue, made at the expense of the plaintiffs, who relinquished the security gained by their levy, because he was deceived by one of his own partners in a collateral matter. But the misconception which avoids a contract is necessarily a mutual one, and of a fact which entered into the contemplation of both parties as a condition of their assent. If it related to a thing which was but a collateral matter, or the ultimate object or motive of the one party, it will not prejudice the other who was not influenced by it. On any other principle no one could be held to a bargain induced by a mistaken expectation of gain. As to the contingent nature of the assignment, it is enough that the parties were content with the terms of it, and that the plaintiffs have held the judgments subject to it. We are unable to perceive, therefore, that the evidence was improperly excluded.

Judgment affirmed.